IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DANIEL VADEN,

                    Plaintiff,

vs.                                        Case No. 10-1255-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff

supplemental security income payments.  The matter has been fully

briefed by the parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the

national economy.   42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential

evaluation process to determine disability.  If at any step a

finding of disability or non-disability can be made, the

Commissioner will not review the claim further.  At step one, the

agency will find non-disability unless the claimant can show that

he or she is not working at a "substantial gainful activity."  At

step two, the agency will find non-disability unless the claimant

shows that he or she has a "severe impairment," which is defined

as any "impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability

to do basic work activities."  At step three, the agency

determines whether the impairment which enabled the claimant to

survive step two is on the list of impairments presumed severe

enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can

do his or her previous work; unless the claimant shows that he or

she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth

and final step requires the agency to consider vocational factors

(the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 22, 2009, administrative law judge (ALJ) William H. Rima issued his decision (R. at 14-20). Plaintiff alleges that he has been disabled since August 30, 2007 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 12, 2007, the application date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairment: chronic obstructive pulmonary disease (R. at 16). At step three, the ALJ determined that

4

plaintiff's impairments do not meet or equal a listed impairment (R. at 16).  After determining plaintiff's RFC (R. at 16), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 19).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III.  Did the ALJ err by failing to obtain recent medical records on the plaintiff?**

The record includes October 2008 medical records from Dr. Shahzada, a treating physician (R. at 192-195).  Those records were requested on October 30, 2008 (R. at 192).  At the hearing on March 3, 2009, plaintiff testified that he had continued seeing Dr. Shahzada on a number of occasions after October 2008, and indicated that he had last seen him on February 12, 2009 (R. at 29-30).  However, there is no indication in the record that the ALJ attempted to obtain any further medical records from Dr. Shahzada before issuing his decision on June 22, 2009.  Plaintiff has attached to his brief an appendix of medical records from Dr. Shahzada from November 12, 2008, February 12, 2009, and May 12, 2009 (Doc. 13-1).  The sole issue raised by the plaintiff is whether the ALJ erred by failing to obtain further medical records from Dr. Shahzada prior to issuing his decision.

42 U.S.C. § 423(d)(5)(B) states as follows:

In making any determination with respect to
whether an individual is under a disability
or continues to be under a disability, the
Commissioner of Social Security shall
consider all evidence available in such
individual's case record, **and shall develop a
complete medical history of at least the
preceding twelve months for any case in which
a determination is made that the individual
is not under a disability. In making any
determination the Commissioner of Social
Security shall make every reasonable effort
to obtain from the individual's treating
physician (or other treating health care
provider) all medical evidence, including
diagnostic tests, necessary in order to
properly make such determination**, prior to
evaluating medical evidence obtained from any
other source on a consultative basis.

(emphasis added).  Although the claimant has the burden of

providing medical evidence proving disability, the ALJ has a

basic duty of inquiry to fully and fairly develop the record as

to material issues.  This duty is especially strong in the case

of an unrepresented claimant.  The ALJ has a duty to develop the

record by obtaining pertinent, available medical records which

come to his attention during the course of the hearing.  Carter

v. Chater, 73 F.3d 1019, 1021, 1022 (10th Cir. 1996).

In the case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th

Cir. 2006), the court set forth the applicable law regarding the

ALJ's duty to develop the record regarding medical evidence:

"It is beyond dispute that the burden to
prove disability in a social security case is
on the claimant." Hawkins v. Chater, 113 F.3d
1162, 1164 (10th Cir.1997); 20 C.F.R. §
404.1512(a) ( "[Y]ou must bring to our

attention everything that shows that you are
… disabled."). Nevertheless, because a
social security disability hearing is a
nonadversarial proceeding, the ALJ is
"responsible in every case 'to ensure that an
adequate record is developed during the
disability hearing consistent with the issues
raised.' " Hawkins, 113 F.3d at 1164 (quoting
Henrie v. United States Dep't of Health &
Human Servs., 13 F.3d 359, 360-61 (10th
Cir.1993)); 20 C.F.R. § 404.944 (requiring
the ALJ to "look[ ] fully into the issues").
Generally, this means that the "ALJ has the
duty to...obtain[ ] pertinent, available
medical records which come to his attention
during the course of the hearing." Carter v.
Chater, 73 F.3d 1019, 1022 (10th Cir.1996).
Moreover, the ALJ's "duty is heightened" when
a claimant, like Mr. Madrid, appears before
the ALJ without counsel. Henrie, 13 F.3d at
361; Musgrave v. Sullivan, 966 F.2d 1371,
1374 (10th Cir.1992) (same); see also Dixon
v. Heckler, 811 F.2d 506, 510 (10th Cir.1987)
("The [ALJ's] duty of inquiry takes on
special urgency when the claimant has little
education and is unrepresented by counsel.").

In Madrid, the ALJ acknowledged that Mr. Madrid was referred for

a rheumatology work-up and that a rheumatoid factor test was

performed, but the ALJ apparently dismissed the possibility of a

rheumatological disorder because the record contained no evidence

of the results of a rheumatology work-up.  The court held that

the ALJ committed legal error by not requesting the rheumatoid

factor test results.  The court found that this failure was

especially troubling because Mr. Madrid was not represented by

counsel at the administrative hearing, the test results were in

existence at the time of the hearing and apparently available,

and the ALJ was aware the test was performed.  447 F.3d at 791.

In the case before the court, plaintiff was not represented at the hearing, the ALJ had before him treatment records from Dr. Shahzada for October 2008, and the ALJ was informed at the hearing that plaintiff had continued seeing Dr. Shahzada subsequent to October 2008. Plaintiff has also provided to the court medical records from Dr. Shahzada after October 2008.

Therefore, the question presented is whether the ALJ committed reversible error by failing to obtain the subsequent medical records from the treating physician. In the case of Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997), the court indicated that when the ALJ fails to obtain existing medical records that come to his attention, it may be appropriate to require the claimant to prove prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error.

The ALJ relied on a physical RFC assessment signed by Dr. Cowles and Dr. Williamson in finding that plaintiff can perform work at all exertional levels, but that he should avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation (R. at 16, 18). Both Dr. Cowles and Dr. Williamson provided a narrative explanation discussing the medical evidence in support of their findings (R. at 219-220). Plaintiff has presented no medical evidence which disputes their findings.

Plaintiff did provide the subsequent medical records from

Dr. Shahzada (Doc. 13-1).  First, plaintiff himself states that this evidence is "not intended to represent new evidence of Plaintiff's disability" (Doc. 13-1 at 1).  Second, the court has reviewed these medical records, and there are no statements or findings by Dr. Shahzada which question, dispute or create any reasonable doubts regarding the RFC findings or any other findings of the ALJ.  This is not a situation, as in <u>Madrid</u>, where the ALJ dismissed the possibility of a certain disorder although the ALJ was aware that testing had been performed regarding that disorder, and the test results were apparently available.  In <u>Madrid</u>, the missing evidence would clearly have been important in resolving the issue of the existence of the disorder, and its impact on the claimant's ability to work.

Although the ALJ should have asked for the additional records when he was informed that plaintiff had further medical treatment from Dr. Shahzada, on the facts of this case, the court finds that plaintiff has failed to demonstrate prejudice by establishing that the missing medical records would have been important in determining plaintiff's RFC or resolving the claim of disability.  Therefore, any error by the ALJ for not requesting the additional medical records does not constitute reversible error.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42

U.S.C. § 405(g).

Dated this 21st day of June, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge